IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 21-60770-CIV-COHN/STRAUSS

FATMA FERJANI, AFIFA BACCOUCHE,
RODELINE HILAIRE, and AYLONN
GDAIEM, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

    v.

MAXIMUS FEDERAL SERVICES, INC.,

        Defendant.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION TO APPROVE SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

Procedural Background and Settlement Negotiations ........................................... 2

   I.   Factual Allegations.......................................................................................... 2

   II.   Procedural Background and Settlement Negotiations.................................... 3

Summary of the Settlement Terms ....................................................................... 4

   I.   The Qualified Settlement Fund. .................................................................... 4

   II.   Plaintiffs. ....................................................................................................... 4

   III.   Notice and Distribution Procedure. ............................................................. 5

   IV.   Allocation Formula. ...................................................................................... 5

   V.   Release. .......................................................................................................... 6

   VI.   Service Award. .............................................................................................. 6

   VII.   Settlement Administration............................................................................. 7

   VIII.   Attorneys' Fees and Litigation Costs........................................................... 7

ARGUMENT ......................................................................................................... 7

   I.   The Settlement Agreement Resolves a *Bona Fide* Dispute. ........................ 8

   II.   The Six Fairness Factors Support Approval.................................................. 9

   III.   Plaintiffs' Attorneys' Fees and Costs Should Be Approved........................ 12

     A.   Plaintiffs' Request For Fees and Costs Should be Granted......................... 14

     B.   Lodestar Rates ............................................................................................. 19

     C.   Plaintiffs' Counsel is Entitled to Reimbursement of Expenses. .................. 23

   IV.   The Requested Service Awards Are Fair. .................................................... 23

CONCLUSION ....................................................................................................25

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Civil Liberties Union of Georgia v. Barnes,*
    168 F.3d 423 (11th Cir. 1999) ................................................................. 14

*Bonetti v. Embarq Mgmt. Co.,*
    715 F. Supp. 2d 1222 (M.D. Fla. 2009) ................................................... 13

*Brewer v. Southern Union Co.,*
    607 F. Supp. 1511 (D. Colo. 1984) .......................................................... 17

*Buntin v. Square Foot Mgmt. Co., LLC,*
    No. 6:14-CV-1394-ORL-37, 2015 WL 3407866
    (M.D. Fla. May 27, 2015) ........................................................................ 23

*Caamal v. Shelter Mortg. Co.,*
    No. 6:13-CV-706-ORL-36, 2013 WL 5421955
    (M.D. Fla. Sept. 26, 2013) ...................................................................... 23

*CC-Aventura, Inc. v. Weitz Co., LLC,*
    2008 WL 276057 (S.D.Fla. 2008) ........................................................... 19

*Comstock v. Fla. Metal Recycling, LLC,*
    No. 08-81190-CIV, 2009 WL 1586604 (S.D. Fla. June 5, 2009)............ 14

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ................................................................... 8

*Craik v. Minnesota State University Bd.,*
    738 F.2d 348 (8th Cir. 1984) ................................................................... 17

*Dail v. George A. Arab Inc.,*
    391 F. Supp. 2d 1142 (M.D. Fla. 2005) ...................................... 8, 10, 11

*Demaria-Dominguez v. Keys Prods., Inc.,*
    Case No.: 15-10224-CIV-MARTINEZ-GOODMAN (S.D. Fla. 2015) ................... 19

*Desogos v. 6020 NFH Pizza, Inc.,*
    No. 20-cv-80395-RAR, 2021 WL 7082949 (S.D. Fla. Jan. 14, 2021)...................... 1

*Dozier v. DBI Servs., LLC,*
    No. 3:18-cv-972-BJD-MCR, 2021 WL 6061742
    (M.D. Fl. Dec. 22, 2021)........................................................................... 24

*Freeman v. Trainingwheel Corp., LLC,*
No. 2:19-CV-52-FTM-NPM, 2020 WL 7401488
(M.D. Fla. June 26, 2020) .......................................................................... 24

*Heng Chan v. Sung Yue Tung Corp.,*
No. 03 Civ. 6048(GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007) .................... 21

*Johnson v. Georgia Highway Express, Inc.,*
488 F.2d 714 (5th Cir. 1974) .......................................................... 15, 16

*Johnson v. NPAS Solutions, LLC,*
975 F.3d 1244 (11th Cir. 2020) .............................................................. 23

*Jordan, et. al. v. South Florida Racing Ass'n, LLC,*
Case No.: 16-CV-21893-GAYLES (S.D. Fla. 2016) .............................................. 19

*Leverso v. S. Trust Bank of Ala. Nat. Assoc.,*
18 F.3d 1527 (11th Cir. 1994) ................................................................ 7

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,*
487 F.2d 161 (3rd Cir. 1973) ............................................................... 17

*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982) ...................................................... 1, 7, 8

*McGee v. Family Dollar Stores of Florida, Inc.,*
2:14-cv-14370-Rosenberg/Lynch, 2016 WL 687622
(S.D. Fla. Feb. 19, 2016) .................................................................. 7

*Norman v. Housing Auth. of Montgomery,*
836 F.2d 1292 (11th Cir 1999) ............................................................ 22

*Norris v. Lake Conway Landscaping of Orlando, Inc.,*
No. 6:14-CV-1512-ORL-37, 2015 WL 3632314
(M.D. Fla. June 10, 2015) ................................................................. 9

*Rappaport v. Embarq Mgmt. Co.,*
No. 6:07–cv–468–Orl–19DAB, 2008 WL 4642593
(M.D.Fla. Oct.17, 2008) ................................................................. 23

*Saccoccio v. JP Morgan Bank, N.A.,*
297 F.R.D. 683 (S.D. Fla. 2014) .......................................................... 9

*Silva v. Miller,*
307 Fed. Appx. 349 (11th Cir. 2009) ................................................. 12, 13

*Small v. Beach Pizza, Inc.*,
No. 3:20-CV-1306-BJD-MCR, 2021 WL 6125479
(M.D. Fla. Nov. 5, 2021) ...................................................................................... 13

*Stanford Daily v. Zurcher*,
64 F.R.D. 680 (N.D. Cal. 1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977).................... 18

*Velez v. Audio Excellence, Inc.*,
No. 10 Civ. 1448, 2011 WL 4460110 (M.D. Fla. Sept. 21, 2011) ........................... 7

*Vinson v. Critter Control, Inc.*
No. Civ.A. 11-0714-KD-N, 2012 WL 6737508
(S.D. Ala. Dec. 28, 2012).................................................................................... 14

*Wing v. Plann B Corp.*,
No. 6:11–cv–1499–Orl–36GJK, 2012 WL 4746258
(M.D. Fla. Sept. 17, 2012) .................................................................................. 13

## Statutes

29 U.S.C. § 216(b) ............................................................................................... 12

29 U.S.C. § 260..................................................................................................... 11

## INTRODUCTION

Plaintiffs Fatma Ferjani, Afifa Baccouche, Rodeline Hilaire, and Aylonn Gdaiem ("Named Plaintiffs") and Defendant Maximus Federal Services, Inc. ("Maximus" or "Defendant") have reached a settlement in the above-captioned lawsuit (the "Action").[1]  The Named Plaintiffs and Defendants (collectively, the "Parties") executed the Settlement Agreement after a comprehensive investigation, a mediation session before Anne Marie Estevez, and extensive arm's length negotiations between experienced counsel.

This Settlement Agreement resolves a *bona fide* dispute over Defendant's employees' wages with a fair, reasonable, and adequate agreement.  Therefore, the Settlement Agreement meets the standard for approval of a Fair Labor Standards Act settlement in this Circuit.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *Desogos v. 6020 NFH Pizza, Inc.*, No. 20-cv-80395-RAR, 2021 WL 7082949, *1 (S.D. Fla. Jan. 14, 2021).  The Parties respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement (Exhibit A) and Individual Settlement Agreements (Exhibits A(2), A(3)); (2) approving the proposed Notice of Settlement (Exhibit A(4)), and directing its distribution and the distribution of the Individual Settlement Payments; (3) approving

---

[1]    The Settlement is memorialized in the Settlement Agreement, attached as Ex. A. Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.  The parties are still in the process of obtaining Named Plaintiff Gdaiem's signature to the Settlement Agreement and fully executing Named Plaintiff Gdaiem's Individual Settlement Agreement.  The parties will supplement this filing once those signatures are obtained.

a Service Award of $2,750 to each Named Plaintiff; (4) approving Plaintiffs' request for attorneys' fees in the amount of $21,651.77 and litigation costs in the amount of $13,051.02; (6) approving the Settlement Administrator's fees and costs not to exceed $11,000.00, to be paid by Defendant; and (7) incorporating the terms of the Settlement Agreement and dismissing this case with prejudice.

**Procedural Background and Settlement Negotiations**

## I.   Factual Allegations.

Maximus operates customer contact centers, commonly referred to as call centers, throughout the United States servicing projects for its federal agency customers. The four Named Plaintiffs worked for Maximus in Florida on its recent federal census project, with their employment beginning between February and April of 2020 and concluding in mid-October of 2020.  (Def.'s Answer, ECF 21, ¶¶ 9-12.)

In approximately April of 2020, in response to the COVID-19 pandemic, Maximus implemented daily health screening assessments for employees working on-site at the company's contact centers.  (ECF 29 at 1.)  This screening assessment consisted of employees answering questions on a mobile application, known as "Clear2Work," designed to determine whether employees presented a COVID-19 risk in the workplace.  (*Id.*)

Named Plaintiffs allege that they and other similarly situated non-exempt employees regularly worked for Defendant in excess of 40 hours each week but never received overtime pay for hours worked in excess of 40 hours in a single workweek. (Compl. ¶¶ 13, 19, ECF 1.)  Specifically, they allege that by completing the required Clear2Work screening assessment, they worked approximately two hours of unpaid

2

overtime per week. (*Id.*, ¶¶ 14, 15, 19.) Defendant denies any liability or wrongdoing of any kind associated with the claims that are alleged in the Complaint, and, for any purpose other than settling this action, denies that this action is appropriate for collective treatment.

## II.     Procedural Background and Settlement Negotiations.

Plaintiffs initiated this Action on April 8, 2021 by filing a Complaint against Maximus alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). (ECF 1.) On Defendant's unopposed motion dated May 3, 2021 (ECF 11), the Court enlarged the time for Maximus to respond to the Complaint through June 2, 2021 (ECF 13.) On May 6, 2021, Named Plaintiffs moved to conditionally certify a collective action and for authorization to issue notice to putative members of the collective. (ECF 14.) Maximus filed its Answer denying Plaintiffs' material allegations and asserting affirmative defenses on June 2, 2021. (ECF 21.) Maximus filed its opposition to the conditional certification motion on July 6, 2021. (ECF 27.)

On July 21, 2021, the Court entered an order conditionally certifying a class of "[a]ll current and former hourly employees of the Defendant who used the Clear2Work application since May 1, 2020." (ECF 29 at 8.) Notice of the Action was mailed to the conditionally certified class on August 19, 2021 (ECF 31), and the initial opt-in period closed on October 18, 2021 (*see* ECF 39.) On November 6, 2021, the parties jointly moved the Court to authorize a second round of notice to additional potential opt-in plaintiffs, which the Court granted. (*See* ECF 56, 57.) Notice of the Action was then mailed to a supplemental group of potential opt-in plaintiffs on December 7, 2021 (ECF 61), and the second opt-in period closed on February 7, 2022

(ECF 62).  In total across both opt-in periods, 343 individuals filed consent forms to join the Action in addition to the four named Plaintiffs.[2]

Mediation was held virtually before Anne Marie Estevez of Morgan, Lewis & Bockius LLP on March 23, 2022.  (ECF 78, 83).  Although the Parties were unable to conclude a settlement at the mediation, they continued settlement discussions after the mediation ended, and, on March 30, 2022, the Parties agreed on the material terms of a settlement agreement.  (ECF 83.)

<u>Summary of the Settlement Terms</u>

## I.     <u>The Qualified Settlement Fund.</u>

Defendant has agreed to pay $75,000.00 to settle the claims in this Action ("Settlement Amount"), which shall be used to provide for: (i) Individual Settlement Payments to the 347 named and opt-in Plaintiffs; (ii) a Service Award to each of the four Named Plaintiffs; and (iii) Attorneys' Fees and Costs of Plaintiffs' Counsel.[3] Ex. A, §§ 2-4.  Defendant shall pay the settlement administration costs.  Ex. A, § 5. Defendant's share of federal and state payroll taxes shall be determined by the Settlement Administrator and paid by Defendant. *Id.* § 9(e).

## II.    <u>Plaintiffs.</u>

The Settlement Agreement covers only those Plaintiffs, as defined in the Agreement, who submitted consent forms to join the Action. Ex. A, § 2(c); *see* Ex. A(1).

---

[2]     A list of the named and opt-in Plaintiffs who filed consents to join the action is attached as Exhibit A(1) to the Settlement Agreement.

[3]     "Plaintiffs' Counsel" means Law Offices of Levy & Levy, P.A. and Greenspoon Marder LLP. Ex. A, § 1(a).

The Settlement Agreement does not resolve or release the claims of any individual who has not opted into the Action.

## III.   Notice and Distribution Procedure.

Within thirty-five (35) days following the entry of an order approving the Settlement, the Settlement Administrator shall send copies of the Court-approved Notice of Settlement (*see* Ex. A(4)) and checks for the *pro-rata* Individual Settlement Payment ("Settlement Payment Checks") to all Plaintiffs via U.S. first class mail.  Ex. A, § 10(d), (g).  All Settlement Payment Checks shall remain valid and negotiable for one-hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Individual Settlement Payment will be deemed void and of no further force and effect. *Id.* § 10(l).  Any settlement checks not cashed within 180 days of issuance to a Plaintiff will be deemed null and void and will revert back to Defendant. *Id.*

## IV.   Allocation Formula.

The attorneys' fees and costs ($34,702.79) and the Service Awards to Named Plaintiffs ($2,750 per Named Plaintiff) shall be deducted from the gross Settlement Amount before determining the individual payment to each Plaintiff.  Ex. A, § 6.  The individual payment to each Plaintiff shall be equal to a *pro rata* share of the Settlement Amount (less attorneys' fees and costs and the Service Awards to Named Plaintiffs), *i.e.*, $84.43 per Plaintiff.  *Id.*

## V.   Release.

In consideration of the benefits to be received by Named Plaintiffs under this Settlement Agreement, Named Plaintiffs shall execute an Individual Release Agreement that includes a general release of all claims against Releasees.[4] Ex. A, § 11; Ex. A(2), Ex. A(3).[5]  In consideration of the benefits to be received by Opt-in Plaintiffs under this Settlement Agreement, Opt-in Plaintiffs shall be deemed to have released and discharged Releasees from any and all claims under the FLSA that were or could have been asserted in the Action, whether known or unknown, including, without limitation, claims for unpaid wages and overtime, liquidated damages, and attorneys' fees and costs, any claims under the theory of quantum meruit, and any other state, federal, or local law related to the payment of wages or any other benefits. Ex. A, § 12.

## VI.   Service Award.

The Settlement Agreement provides that, subject to Court approval, Named Plaintiffs Ferjani, Baccouche, Hilaire, and Gdaiem each will receive a $2,750.00 Service Award payment for their efforts in bringing and prosecuting the Action and in consideration of the general release set forth above. Ex. A, § 11.

---

[4]     "Releasees" means Maximus, together with Maximus's parents, subsidiaries, affiliates, divisions, partners, members, joint ventures, predecessor and successor corporations and business entities, past, present, and future and its and their agents, directors, officers, employees, shareholders, insurers and reinsurers, representatives, attorneys, and employee benefit plans and administrators (and the trustees or other individuals affiliated with such plans) past, present, and future. Ex. A, § 11.

[5]     Named Plaintiff Gdaiem will not release claims he has asserted against Defendant in the Charge of Discrimination filed with the Equal Employment Opportunity Commission, Charge No. 510-2021-04970.  Ex. A(3), § 2(b).

VII.   <u>Settlement Administration.</u>

The Parties have designated, and Defendant has retained, Rust Consulting, a wage and hour claims administrator, to serve as the Settlement Administrator.  *Id.* § 8.  Rust Consulting's fee, not to exceed $11,000, will be paid by Defendant. *Id.* § 5.

VIII.   <u>Attorneys' Fees and Litigation Costs.</u>

Subject to Court approval, Plaintiffs' Counsel will receive attorneys' fees of $21,651.77, plus up to $13,051.02 for reasonable out-of-pocket costs and case expenses incurred in litigation and resolving this matter. Ex. A, § 3.

**<u>ARGUMENT</u>**

When a private action brought under the FLSA subsequently settles, "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982) (citations omitted).  The court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id.* at 1355; *see also Velez v. Audio Excellence, Inc.*, No. 10 Civ. 1448, 2011 WL 4460110, at *1 (M.D. Fla. Sept. 21, 2011) (same).

Courts evaluating the fairness of a private FLSA settlement consider a number of factors: (1) existence of fraud; (2) complexity of the case; (3) the point of the proceedings when the settlement occurs; (4) the probability of success on the merits; (5) the range of possible recovery; and (6) counsel's opinion. *See Leverso v. S. Trust Bank of Ala. Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *McGee v. Family Dollar Stores of Florida, Inc.*, 2:14-cv-14370-Rosenberg/Lynch, 2016 WL 687622, at *1 (S.D. Fla. Feb. 19, 2016). If the settlement reflects a reasonable compromise over FLSA

issues that are actually in dispute, the court may approve the settlement "to promote the policy of encouraging settlement in litigation." *Lynn's Food Stores*, 679 F.2d at 354. The court should be mindful of the strong presumption in favor of finding a settlement fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

Here, the Settlement Agreement resolves a *bona fide* dispute, and application of the six factors supports approval of the Settlement Agreement.

## I.   The Settlement Agreement Resolves a *Bona Fide* Dispute.

The Settlement Agreement is the result of a *bona fide* dispute. Defendant's former employees alleged in this Action that they and other similarly situated non-exempt employees performed compensable work by completing a required daily health screening assessment outside of their scheduled work hours for which they were not paid, and seeking unpaid wages and overtime pay under the FLSA. The lawsuit was vigorously contested and only resolved after Defendant produced evidence and declarations from multiple employees supporting Defendant's defenses, the Parties submitted mediation statements to a mediator, and the Parties attended a mediation. Throughout this process, the Parties identified multiple factual and legal disputes, including: (1) whether the collective of non-exempt employees could remain certified; (2) whether Plaintiffs engaged in compensable work activities that were more than *de minimis* for which they were not paid all wages and overtime owed under the FLSA; (3) whether Defendant should be held liable for liquidated damages; and (4) whether Defendant's alleged violation of the FLSA was willful.The Settlement Agreement resolves these contested issues. The employees are not

merely waiving their FLSA rights, they are releasing claims of value in exchange for a substantial settlement payment.  Thus, the Settlement Agreement resolves a *bona fide* dispute.

## II.   The Six Fairness Factors Support Approval.

The Settlement Agreement satisfies all six fairness factors.  First, the Settlement is not the product of fraud or collusion, and instead, is the result of arms' length negotiations between experienced counsel that were facilitated by an exchange of information to inform damages calculations, and was reached after an approximately seven-hour mediation session before an experienced mediator.  *See Saccoccio v. JP Morgan Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Norris v. Lake Conway Landscaping of Orlando, Inc.*, No. 6:14-CV-1512-ORL-37, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (finding that a "significant compromise" of claims was fair and reasonable where "[p]laintiff was represented and counseled by experienced attorneys, he obtained discovery from [d]efendants, resolution of the action after trial is uncertain, and a well-respected mediator assisted the parties in reaching their settlement.").

Second, the complexity, expense, and likely duration of litigation in this case supports approval of the Settlement.  Following the Court's decision granting conditional certification and issuance of notice to the putative collective, the Parties agreed to a second issuance of notice to supplemental potential plaintiffs, and then agreed to participate in negotiations at an early stage of the case.  In the absence of settlement, the Parties would have engaged in lengthy, complex, and costly legal proceedings that

would last for months or even years. Among other things, the Parties would have had to undertake time-consuming and expensive discovery, including depositions; brief FLSA decertification; brief summary judgment motions regarding the merits of Plaintiffs' claims; and possibly proceed to trial and post-trial appeal proceedings. Thus, the complexity, expense, and likely duration of legal proceedings weighs in favor of settlement approval.

Third, the stage of the proceedings also supports approval. Here, the parties have engaged in an informal exchange of data and information prior to and during the mediation, which has allowed Plaintiffs' Counsel to assess the overtime hours worked and the compensation owed to each of the Named and Opt-in Plaintiffs in this case. *See Dail*, 391 F. Supp. 2d at 1147 ("[E]arly resolution of FLSA claims are encouraged and extensive discovery typically is unnecessary."). Thus, this factor supports approval of the Settlement because Plaintiffs' Counsel has adequately evaluated the merits of the claims before engaging in settlement negotiations.

Fourth, the probability of Plaintiffs' success on the merits likewise supports approval. The Settlement reflects the fact that Defendant would have vigorously contested the merits of Plaintiffs' claims, including its contention that it has properly compensated employees for all hours worked. Additionally, Defendant contends that the shorter two-year statute of limitations under the FLSA would have been appropriate because any alleged violation was not willful, which would significantly limit

the possible recovery in this case. *See Dail*, 391 F. Supp. 2d at 1147 ("Plaintiffs' probability of success on the merits was uncertain. The Court finds that settlement of the action in favor of certainty was fair and reasonable.").

Further, were Plaintiffs to succeed in litigation, they would have sought liquidated damages in an amount equal to their unpaid overtime compensation, whereas Defendant would contend that it acted in good faith and that liquidated damages were not appropriate. *See* 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith"). Given the disputed issues, a settlement by which Defendant has agreed to pay 100% of the alleged unliquidated FLSA damages to the Named Plaintiffs (*see* ECF 8) and provides Opt-Plaintiffs certainty with respect to their alleged unpaid wages, is a fair and reasonable compromise of Plaintiffs' claims.

Fifth, the range of possible recovery favors approval. Plaintiffs' Counsel calculated the potential unliquidated unpaid wage damages of the four Named Plaintiffs as follows: approximately $2,211.00 in unliquidated overtime for Named Plaintiffs Ferjani and Hilaire, and approximately $1,742.00 in unliquidated overtime for Named Plaintiffs Baccouche and Gdaiem. (ECF 8.) Defendant denied that any Plaintiff was underpaid or worked "off-the-clock overtime," and denied that Plaintiffs are entitled to damages of any kind, including liquidated damages, because Defendant did not willfully or otherwise violate the FLSA. (ECF 9.) Defendant also produced data and testimony of multiple hourly employees showing that Plaintiffs' allegations grossly exaggerated the amount of time they spent completing the health screening

11

questionnaires, and that such activity was non-compensable and *de minimis*. (*See* ECF 27-2, ¶ 9; ECF 27-6 through 27-15.) Further, the amount of potential damages in this case would be circumscribed by the limited period during which the health screening was required. As a result of the Settlement Agreement, notwithstanding these disputed issues, Named Plaintiffs will receive payments more than adequate to cover their alleged unliquidated damages, and Opt-in Plaintiffs will receive payments for alleged uncompensated work time well within the range of possible range of recovery, without the need for lengthy discovery, and the delay associated with motion practice, trial, and the possibility of appeal. Therefore, the recovery to Plaintiffs is a fair and reasonable resolution of the dispute in this case and should be approved.

Sixth, the opinions of counsel also support approval. Plaintiffs' Counsel have significant experience in pursuing state wage and hour class and FLSA collective actions. At all relevant times, Plaintiffs' Counsel have (and will continue to) aggressively and competently assert the interests of the Plaintiffs. Given Plaintiffs' Counsel's skill and experience in wage and hour litigation, their support for the Settlement should be given deference. Thus, all six factors support approval of the Settlement.

## III.   Plaintiffs' Attorneys' Fees and Costs Should Be Approved.

Finally, Plaintiffs' Counsel request approval of fees in the amount of $21,651.77, as well as out-of-pocket costs in the amount of $13,051.02, to which Defendant consents.The FLSA includes a mandatory fee-shifting provision, requiring the Court to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (unpublished) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946))

("The language of the statute contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'"). A court reviewing an FLSA settlement typically must review "the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 Fed. Appx. at 351.

In the wake of *Silva*, multiple district courts have deemed scrutiny of the reasonableness of plaintiffs' agreed-upon attorney's fees to be unnecessary in an FLSA settlement where, as here, "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Small v. Beach Pizza, Inc.*, No. 3:20-CV-1306-BJD-MCR, 2021 WL 6125479, at *3 (M.D. Fla. Nov. 5, 2021) ("[T]he Court need not conduct an in-depth analysis of the reasonableness of the attorneys' fees and costs if the proposed settlement appears reasonable on its face and there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of attorneys' fees and costs to be paid to counsel."); *Wing v. Plann B Corp.*, No. 6:11–cv–1499–Orl–36GJK, 2012 WL 4746258, at *4 (M.D. Fla. Sept. 17, 2012) (declining to examine reasonableness of

attorney's fee payment in FLSA settlement where the FLSA claims were compromised, there was a reasonable basis for such compromise, and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees").

In this case, the Parties did not discuss the amount of attorneys' fees until after they reached a tentative agreement on the total Settlement Amount, Service Awards, and costs.  Only then did the Parties separately negotiate the amount of attorney's fees separately so as not to interfere with the amounts being provided to the Named Plaintiffs and Opt-in Plaintiffs.  Nonetheless, in an abundance of caution, the Parties address the reasonableness of the fees sought by Plaintiffs' Counsel.

### A.    <u>Plaintiffs' Request For Fees and Costs Should be Granted.</u>

"In assessing the reasonableness of attorneys' fees to be awarded following an FLSA settlement, courts use the lodestar method. . . .  Thus, the plaintiff's attorney must provide the court with documentation showing the number of hours expended, as well as support for the claimed hourly rate."  *Comstock v. Fla. Metal Recycling, LLC*, No. 08-81190-CIV, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009) (internal citations and quotations omitted); *see also Vinson v. Critter Control, Inc.* No. Civ.A. 11-0714-KD-N, 2012 WL 6737508, at *3 (S.D. Ala. Dec. 28, 2012) ("In FLSA actions, this Court begins with the lodestar analysis.").  The reasonable hourly rate is defined as the "'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"  *Amer. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir 1999)).

In determining the reasonable hourly rate, courts consider the guiding factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Examining several of these factors below demonstrates the reasonableness of counsel's lodestar rates.

### i.    Time and labor required

Plaintiffs seek recovery of attorneys' fees for time and labor reasonably expended by Plaintiffs' Counsel in connection with this action, including, among other activities, pre-suit investigation, document analysis, legal research, briefing Plaintiffs' conditional certification motion, communications with opposing counsel, communications with Named Plaintiffs and the hundreds of Opt-in Plaintiffs, and preparation for and participation in the mediation. All of these activities were necessary to accomplish reaching the Settlement. (*See* Exhibits 1-3.)[6]

### ii.    Novelty and difficulty of the questions

This case presented a novel issue that has not been extensively litigated in any Circuit, *i.e.*, the compensability of time spent completing mandatory health screenings during the COVID-19 pandemic. Further, this case involved specific and unique factual and legal issues requiring careful and extensive legal research and analysis by Plaintiffs' Counsel that was critical to determine Plaintiffs' litigation strategy, as well as strategy for mediation.

---

[6]    Exhibit 1 is the affidavit of attorney Chad E. Levy; Exhibit 2 is the affidavit of attorney Peter Siegel; and Exhibit 3 is the affidavit of attorney Alejandro Leiva.

### iii.     The skill requisite to perform the legal service properly

Plaintiffs' Counsel performed their services efficiently and diligently, and the undersigned litigated this case in a professional and civil matter throughout these proceedings.  *Johnson*, 488 F.2d at 718 ("The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court.").  This includes timely complying with deadlines and cooperating with Maximus' counsel to coordinate an early settlement opportunity given the number of Opt-in Plaintiffs who joined this suit.  Plaintiffs' Counsel have demonstrated the skill necessary to provide proper legal representation to Plaintiffs.

### iv.     The preclusion of other employment by the attorney due to the acceptance of the case

For this factor, the Court is to consider "the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Id.*  While there are two firms currently representing Plaintiffs, Mr. Seigel and Mr. Leiva were only engaged shortly before mediation, whereas the Levy & Levy firm has represented Plaintiffs from the inception of the case.  Prior to the Greenspoon Marder's appearance in the case, all of the litigation proceedings were handled solely by Levy & Levy, PA, a small firm consisting of three lawyers.  Mr. Seigel and Mr. Leiva were engaged prior to mediation based on their extensive experience with and knowledge of FLSA-related matters in order to facilitate and participate in the mediation process, assist with analysis of complex issues regarding the scope of potential damages and the size of the opt-in class of Plaintiffs, and develop

16

and implement trial strategies should a mutually agreeable settlement not be attained. (DE 81-82.) Considering this case was accepted on a contingent basis, this type of litigation poses greater risks to small firms because the risk of nonpayment may not be offset so easily by the presence of paying work, and because such paying work may have to be turned away once a contingent case is accepted. *See, e.g., Brewer v. Southern Union Co.*, 607 F. Supp. 1511, 1532 (D. Colo. 1984). A case to which a substantial percentage of an attorneys' law practice is devoted is also riskier than an ordinary contingent case. *Craik v. Minnesota State University Bd.*, 738 F.2d 348, 350-351 (8th Cir. 1984).

As evidenced by the affidavits submitted herewith, Plaintiffs' Counsel was fully devoted to litigating this case for Plaintiffs and invested significant time and costs to this case. During periods in this case, specifically during the two Opt-in periods, Plaintiffs' Counsel (particularly, Levy & Levy, PA) expended a substantial amount of available time on this case. Exhibit 1 at ¶16.

### v.   The customary fee and whether fixed or contingent

This was strictly a contingent fee recovery, wherein if Plaintiffs did not prevail, Plaintiffs' Counsel would receive no pay. Exhibit 1 at ¶11. This circumstance justifies the lodestar requested. Cases paid on a contingent basis are inherently riskier than cases in which the attorney will be paid irrespective of the outcome, and an attorney who has represented plaintiffs on a contingent fee basis properly may expect greater compensation for their successful prosecution of the plaintiffs' claims. *See Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3rd Cir. 1973) ("No one expects a lawyer whose compensation is contingent upon

his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success"). This contingent fee analysis is important, as its very purpose is to help "equalize the access of rich, middle-class, and poor individuals to the courts by making attorney decisions concerning representation turn on an action's merits rather than on the size of a client's income." *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 685-686 (N.D. Cal. 1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977).

Plaintiffs' Counsel did not receive a fixed amount of any compensation during the course of this case. Their representation is strictly contingent. Had a settlement not been achieved, and had Plaintiffs' claims ultimately failed, Plaintiffs' Counsel would have expended their time and resources without any pay. Moreover, given the significant costs advanced by Plaintiffs' Counsel, Plaintiffs' Counsel would have suffered a monetary loss if Plaintiffs' claims ultimately failed. As stated above, fees for Plaintiffs' Counsel never compromised or affected the net recovery of Plaintiffs, as the Parties did not address the issue of fees until after they reached a tentative agreement to settle and agreed upon the total settlement amount to be paid in resolution of Plaintiffs' claims. Thus, Plaintiffs' Counsel satisfies this factor.

### vi.    The amount involved and the results obtained

Pursuant to the Parties' settlement agreement, Named and Opt-in Plaintiffs will receive an amount that, based upon the information provided by Defendant, represents the possible recovery Plaintiffs would have received had they prevailed at trial. Thus, Plaintiffs were able to obtain this compensation without having to go

through the litigation process and potentially trial.  All of the Named Plaintiffs are very pleased with the results in this case.

### vii.  The "undesirability" of the case

Given that this case (1) asserted claims against a large company, (2) involved a novel issue, (3) could result in the expenditure of significant costs given the volume of potential plaintiffs, and (4) was taken on by Plaintiffs' Counsel on a contingent fee basis with no guarantee of success, it is likely that many attorneys would find this case undesirable.  Ex. 1 at ¶11.  Instead, the undersigned accepted this case, diligently developed and zealously pursued Plaintiffs' claims, conducted themselves professionally, and ultimately resolved the matter and achieved a recovery through settlement for Plaintiffs.

### B.  Lodestar Rates

The rates requested by Mr. Levy, Mr. Siegel, and Mr. Leiva are more than reasonable within the marketplace for hourly attorney rates.  *See, e.g., CC-Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057 at *2 (S.D.Fla. 2008) (holding $400.00 was reasonable for attorney with eight years' experience, while $200.00 was reasonable for attorney with one year experience).

Chad E. Levy has been practicing labor and employment law for more than seventeen (17) years, has litigated over 2,500 cases, and is a managing partner of Levy & Levy, P.A.  Ex. 1 at ¶¶4-6.  Mr. Levy has litigated on behalf of various types of employees and has been involved in industry-changing cases, through the litigation process and jury trial.  *Id.* at ¶¶8-10.  Recently, Mr. Levy obtained two orders recognizing his substantial experience litigating large cases.  *See Demaria-Dominguez v.*

19

*Keys Prods., Inc.*, Case No.: 15-10224-CIV-MARTINEZ-GOODMAN (S.D. Fla. 2015) ($1,200,000 class-action settlement); *Jordan, et. al. v. South Florida Racing Ass'n, LLC*, Case No.: 16-CV-21893-GAYLES (S.D. Fla. 2016) ($100,000 class-action settlement). *Id.* at ¶10. During the course of this litigation, Mr. Levy expended 85.1 hours. *Id.* at ¶16. Notably, Mr. Levy did not bill for any paralegal time. *Id.* at ¶18. In 2019, Mr. Levy recently obtained an hourly rate of $375.00 per hour in connection with a successful six-plaintiff FLSA Settlement that Judge Moore reviewed and approved. *Id.* at ¶15. Based upon his additional years of experience since 2019 and the handling/results of this specific case, Mr. Levy respectfully requests an hourly rate of $400.00. *Id.* at ¶15.

Peter Siegel has practiced labor and employment law for twenty-nine (29) years and Alejandro Leiva for seven (7) years. They represent both employers and employees in litigating a full range of workplace issues, including FLSA-related matters and those involving allegations of wrongful discharge, discrimination, harassment, and retaliation, including under the Americans with Disabilities Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act of 1964, and the Florida Civil Rights Act of 1992. Although a large majority of their practice consists of representing employers on all aspects of the employment relationship, Mr. Siegel and Mr. Leiva have represented, and continue to represent, both employers and employees across a wide array of industries. During the course of their involvement in this

litigation, Mr. Siegel expended 20.20 hours and Mr. Leiva expended 14.90 hours.[7] Exs. 2 and 3.

When working on these types of claims on a non-contingency basis, Mr. Siegel normally charges $785.00 per hour and Mr. Leiva bills his time at $590.00 per hour. Had they not been working on this contingency matter, the time they devoted to same could have been spent on other existing matters in which they would have been assured of receiving their standard hourly rate. Such standard hourly rate is consistent with fair market value for attorneys of law firms of comparable size. *See, e.g., Heng Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048(GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (noting that attorneys from large firms with substantial overhead may merit "a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case."). Notwithstanding, for purposes of settlement and based upon their experience in handling FLSA-related matters, Mr. Siegel and Mr. Leiva agree that a reduced hourly rate of $400.00 is reasonable under the circumstances.

Here, the Settlement Agreement provides that, separate and apart from the payments to Plaintiffs, Defendant will pay $21,651.77 in attorneys' fees and $13,051.02 in costs incurred by Plaintiffs in prosecuting their claims. Ex. A, § 3. For

---

[7]     Such time was spent conducting a thorough analysis of the case file, evaluating the novel theories and issues involved in the case, developing legal strategy, theories and arguments for mediation and, if necessary, further litigation, preparing for mediation, attending mediation (which, alone, was approximately seven hours in duration) and assisting with post-mediation settlement discussions and mechanics. Notably, Mr. Siegel and Mr. Leiva did not bill for any paralegal time. *Id.*

purposes of settlement, in applying these rates for fees earned through April 25, 2022, Plaintiffs' Counsel have accepted $21,651.77 in attorneys' fees, which is a more than 50% reduction from the fees incurred in this case. Exs. 1-3.  This fee request also represents approximately 28.9% of the total settlement.

The time spent by Plaintiffs' Counsel was reasonable and necessary for the effective resolution of the instant case.  Plaintiffs' Counsel drafted and filed briefs and supporting materials with their motion for conditional certification of the collective action.  After conditional certification was granted, Plaintiffs' Counsel prepared and mailed two rounds of Notice to potential plaintiffs, and then received, reviewed, prepared, and filed Notices and consent forms for 343 Opt-in Plaintiffs.  In addition, Plaintiffs' Counsel also performed a damages calculation, prepared materials for and participated in mediation, and engaged in numerous discussions and written communications with Defendant's Counsel regarding a resolution to the case.[8]  Exs. 1-3.

Overall, this case required the combined experience and skill from both firms to secure the Settlement for Plaintiffs.  Plaintiffs' Counsel have only billed what was reasonably necessary to effectively prepare and litigate this matter.  Accordingly, Plaintiffs' Counsel requests the Court approve their rates as follows:  $400.00 for

---

[8]    The fact that multiple attorneys were engaged on this case should not have any effect on each of their respective hours, particularly as they are seeking recovery only for time expended by attorneys whose work was not duplicative.  *Norman v. Housing Auth. City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.").

Chad E. Levy, Peter Siegel and Alejandro Leiva.  Given the amount of time reasonably expended on the case and the overall success of Plaintiffs, the attorneys' fees agreed to by the Parties are reasonable and should be approved.

### C.   Plaintiffs' Counsel is Entitled to Reimbursement of Expenses.

Plaintiffs' Counsel request reimbursement of $13,051.02 in out-of-pocket expenses to be paid from the gross Settlement Amount.  These expenses, which include court fees, postage fees, service of process fees, and mediation costs, were incidental and necessary to the representation of Plaintiffs. Ex. 1 at ¶19.  Accordingly, the Court should approve the requested costs.

### IV.   The Requested Service Awards Are Fair.

The requested Service Awards for the Named Plaintiffs are fair and reasonable considering their contribution to the resolution of this lawsuit and should be approved.  Although some district courts in this Circuit have rejected service awards in light of *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), or withheld approval of service awards until *Johnson* is more settled, the $2,750 payment to each Named Plaintiff in this Action also represents separate consideration for a general release, which provides the Court with a separate basis for approval of the payment.[9]

---

[9]   A general release does not render the Settlement Agreement unenforceable where the plaintiff receives adequate compensation for such release. *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *2 (M.D. Fla. May 27, 2015) (noting that general releases "can be permissible" where "plaintiffs receive adequate compensation in addition to the entitled benefits under the FLSA"). *See also Rappaport v. Embarq Mgmt. Co.*, No. 6:07–cv–468–Orl–19DAB, 2008 WL 4642593, at *2 (M.D.Fla. Oct.17, 2008) (approving settlement agreement where employee received separate monetary compensation in consideration for signing a general release); *Caamal v. Shelter Mortg. Co.*, No. 6:13-CV-706-ORL-36, 2013

See, e.g., *Dozier v. DBI Servs., LLC*, No. 3:18-cv-972-BJD-MCR, 2021 WL 6061742, at *8-9 (M.D. Fl. Dec. 22, 2021) (acknowledging *Johnson* and recommending approval of $7,500 service fee award to named plaintiff, in part because it served as consideration for the plaintiff's general release of all claims), *report and recommendation adopted*, ECF 132 (M.D. Fl. Jan. 19, 2022).

Named Plaintiffs provided information to Plaintiffs' Counsel that aided in the initial investigation of this suit, the litigation of the suit, and the settlement negotiations. They also participated in the mediation that led to the Settlement Agreement.  Further, participating in the litigation of this matter posed a risk for Named Plaintiffs, as in the employment context workers may face consequences in future employment for participation in a lawsuit.  Considering their contributions to this matter and the risk they shouldered that realized a benefit for the other class members, the $2,750 service payment for each Named Plaintiff is reasonable and should be approved. *Freeman v. Trainingwheel Corp., LLC*, No. 2:19-CV-52-FTM-NPM, 2020 WL 7401488, at *2 (M.D. Fla. June 26, 2020) ("Courts in this Circuit have awarded such incentive payments to named Plaintiffs in FLSA cases when the named Plaintiffs can establish they faced substantial risk by actively being involved in the lawsuit since its inception, provided counsel with assistance which led to a favorable settlement for the entire collective, or incurred actual expenses.").

---

WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (approving FLSA settlement with general release where employee received adequate consideration beyond that arguably due under the FLSA).

## <u>CONCLUSION</u>

For all the above reasons, the Parties respectfully request the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement; (2) approving the proposed Notice of Settlement and directing its distribution with the Settlement Payment Checks; (3) approving a Service Award of $2,750 to each Named Plaintiff; (4) approving Plaintiffs' request for attorneys' fees in the amount of $21,651.77 and litigation costs in the amount of $13,051.02; (5) approving the Claims Administrator's fees and costs not to exceed $11,000.00; and (6) incorporating the terms of the Settlement Agreement and dismissing this case with prejudice.

Dated: May 5, 2022

Respectfully submitted,

/s/ *Robert R. Hearn*

CHAD E. LEVY
FL Bar No. 0851701
DAVID M. COZAD
FL Bar No. 33323
LAW OFFICERS OF LEVY & LEVY,
P.A.
1000 Sawgrass Corporate Park-
way Suite 588
Sunrise, Florida 33323
Tel: 954.763.5722
Fax: 954.763.5723
chad@levylevylaw.com

PETER R. SIEGEL
  FL Bar No. 988634
GREENSPOON MARDER LLP
200 E. Broward Boulevard
Suite 1800
Ft. Lauderdale, FL 33301
Tel: 954.491.1120
Fax: 954.267.8027
peter.siegel@gmlaw.com

ALEJANDRO I. LEIVA
  FL Bar No. 118309
GREENSPOON MARDER LLP
600 Brickell Avenue
Suite 3600
Miami, FL 33131
Tel: 305.789.2770 Ext. 1687
Fax: 305.537.3900
alex.leiva@gmlaw.com

ROBERT R. HEARN
Florida Bar Number 0067687
EPSTEIN BECKER & GREEN, P.C.
1 Beach Drive SE
Suite 303
St. Petersburg, FL 33701
Tel: 888-503-8320
Fax: 888-509-0788
RHearn@ebglaw.com

PAUL DECAMP
  (admitted *pro hac vice*)
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel: 202-861-0900
Fax: 202-296-2882
PDeCamp@ebglaw.com

ADRIANA S. KOSOVYCH
  (admitted *pro hac vice*)
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
Tel: 212-351-4500
Fax: 212-878-8600
AKosovych@ebglaw.com

26